IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL ALLEN,<br><br>　Plaintiff,<br><br>　v.<br><br>PEACOCK  TV LLC ET AL.,<br><br>　Defendants. | Civil Action No.:  BAH-24-971 |

**MEMORANDUM AND ORDER**

Plaintiff Michael Allen ("Plaintiff") filed the above-captioned complaint *pro se* together with a motion for leave to proceed in forma pauperis, ECF 2, which shall be granted.  Plaintiff also filed a supplement to the complaint.  ECF 4.

Section 1915(e)(2)(B) of 28 U.S.C. requires this Court to conduct an initial screening of this complaint and dismissal of any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020).  The Court is mindful of its obligation to construe liberally a complaint filed by a self-represented litigant.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").  Here, Plaintiff's complaint fails to state a claim upon which relief can be granted.  He will be directed to show cause why the complaint should not be dismissed.

Plaintiff brings suit against defendants (1) Peacock TV LLC, (2) Regal Cinemas, Inc, (3) Cinemark Holdings Inc, (4) Home Box Office, Inc, (5) The Walt Disney Company, (6) Netflix, Inc, (7) Hulu, LLC, (8) AMC Entertainment Holdings, Inc, (9) Paramount Global, and (10) Warner Bros Entertainment Inc (collectively "Defendants").  *See* ECF 1.  He alleges various claims for copyright infringement, trade secret misappropriations, and violations of anti-trust laws.  *Id.*  Specifically, he alleges violations of the Digital Millenium Copyright Act ("DMCA"), Executive Order 13565, the Prioritizing Resources and Organization for Intellectual Property Act ("PRO-IP Act"), the Defend Trade Secrets Act of 2016, the Economic Espionage Act of 1996, Article I, Sec. 8 of the U.S. Constitution, the Sherman Act, and the Clayton Act.  *Id.* at 6–7.  In his supplement to the complaint, he adds a new claim under the Federal Trade Communication Act and additional claims under the Sherman Act and Clayton Act.  ECF 4-1, at 1.

Plaintiff alleges that he created a website called  "Markydoo.net, (formerly an invention constructed under the name 'Livewire')," which "has strived to become the inaugural online film streaming platform offering movies currently in theaters, along with plans to consolidate and merge film production companies and movie theaters."  ECF 1, at 11.  According to Plaintiff, "[t]he website held the potential for a substantial market share, as it was pioneering the concept of being the first online box office, a novel approach in the industry."  *Id.*  After Plaintiff "experienced numerous data breaches, including the unauthorized exposure of a business plan (initially under the name Livewire) detailing their movie streaming platform's vision to become the premier online box office and film streaming website, offering movies still in theaters," he "submitted to executives of  companies involved in acquisitions and mergers" his "revised business plan (now under the name markydoo.net)."  *Id.* at 12.  "A prototype and website for the original product were launched in June 2022."  *Id.*

Plaintiff alleges that he has "diligently taken steps to safeguard and advance the concept and innovation behind markydoo.net" and has "presented markydoo.net to executives and representatives of [Defendants]." *Id.* at 11. However, he "harbors suspicions that he has been intentionally sidelined and treated unfairly, with the possible aim of undermining, replicating, or misappropriating the concept and innovation behind markydoo.net." *Id.* He alleges that Defendants "obstructed the plaintiff's product from entering the OTT (over-the-top streaming service) market; thereby hindering competition[,] . . . establish[ing] a monopoly in the film streaming industry, [and] stifling the potential of the plaintiff's film streaming platform." *Id.* In his supplement, Plaintiff explains that "[d]espite possessing competitive features, Markydoo.net faces obstruction from established companies unwilling to entertain proposals or provide an opportunity for fair market entry." ECF 4-1, at 1. He accuses Defendants of "engaging in mergers to stifle competition for emerging streaming platforms" thereby "monopolizing the market, [by] withholding access to content from smaller competitors." *Id.* Attached to his supplement are emails Plaintiff has sent to representatives of Defendants.[1] *See* ECF 4-2. Plaintiff "is likely asking the court to order $3 billion in damages and relief based on their valuation of the potential revenue their company could generate from vendor ticket sales over the next five years." ECF 1, at 13.

The Court addresses the viability of each of Plaintiff's claims in turn.

I.  **Copyright Infringement**

Plaintiff has not stated a claim for copyright infringement under any of the authorities cited. "Through the DMCA, 'Congress sought to mitigate the problems presented by copyright enforcement in the digital age.'" *Chambers v. Amazon.com Inc.*, 632 F. App'x 742, 744 (4th Cir.

---

[1] It appears that one representative wrote Plaintiff back "request[ing] that [Plaintiff] direct all further correspondence with Paramount Global to [him]," rather than others in the company. ECF 4-2, at 7.

2015) (quoting *MDY Indus., LLC v. Blizzard Entertainment, Inc.,* 629 F.3d 928, 942 (9th Cir. 2010)).  "'The DMCA contains three provisions directed at the circumvention of copyright owners' technological measures' that are either designed to control access to copyrighted works or to protect a copyright owner's rights." *Id.* (quoting *MDY Indus., LLC*, 629 F.3d at 942).  To state a claim under the DMCA, a plaintiff copyright owner must allege that "the circumvention of the technological measure either infringes or facilitates infringing a right protected by the Copyright Act." *Id.* (quoting *Storage Tech. Corp. v. Custom Hardware Engineering & Consulting, Inc.,* 421 F.3d 1307, 1318 (Fed. Cir. 2005)).

"A valid copyright registration is required to bring a copyright infringement claim." *Philpot v. Indep. J. Rev.*, 92 F.4th 252, 263 (4th Cir. 2024) (citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022)); *see also* 17 U.S.C. § 411(a) (stating that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). Plaintiff alleges that his website's "unique content, processes, and originality were safeguarded by copyright protection and other legal grounds" and that "[w]ith copyright protections in place, the website stood to monopolize the movie streaming market and/or stand out exclusively as the first online box office."  ECF 1, at 12.  Despite this assertion, Plaintiff has not actually alleged or otherwise shown that he holds the copyright registration for the website at issue (or any other copyright registration, for that matter).  Nor has he explained which part of any copyright protected work was copied by which defendant.[2]  He therefore has not stated a claim for copyright infringement.

---

[2] Plaintiff asserts that "[c]ompetitors *can* study the proprietary processes and technologies of the plaintiff's product, allowing them to replicate or reverse-engineer these elements enabling competitors to produce similar products or services, potentially diluting the uniqueness of the

Further, to the extent Plaintiff seeks to protect his website or the idea contained within the website through copyright, the Copyright Act only protects "original works of authorship fixed in any tangible medium of expression" that fall within certain enumerated categories. 17 U.S.C. § 102(a). "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b). A website is also generally not protected, as it does not fall within one of the categories of works listed in § 102(a). "Although a website may contain text, artwork, photographs, music, videos, or other copyrightable content, the website itself is not typically considered a copyrightable work." United States Copyright Office, *Copyright Registration of Websites and Website Content*, Circular 66, at 1 (March 2021), available at https://www.copyright.gov/circs/circ66.pdf.

Because Plaintiff has not demonstrated that any copyright protected work of his has been copied, he has not stated a claim under the Copyright Act. Further, because Plaintiff has not "claim[ed] to have put into place a technological measure that would have protected a copyright or that any Defendant circumvented such a measure," *see Chambers*, 632 F. App'x at 744, he has not stated a claim under the DMCA. Nor do the constitutional provisions cited by Plaintiff afford him copyright protection. The Supreme Court has explained that Article I, section 8, clause 8 of the U.S. Constitution gives Congress the authority to statutorily administer copyright protections. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 5 (1966) ("The clause is both a grant of power and a limitation"). As discussed, Plaintiff has not stated a claim for copyright infringement under the

---

affected plaintiff's offerings." ECF 1, at 11 (emphasis added). The fact that another *could* copy a work, assuming that work is copyright protected, is not sufficient to assert a copyright infringement claim.

5

statutes enacted by Congress to protect copyright owners, and he cannot state a claim for copyright infringement under the Constitution.

## II. Executive Order No. 13565

Plaintiff cannot state a claim under Executive Order No. 13565. "As a general rule, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995). To state a claim under an executive order, a plaintiff must show that the executive order "was intended to create a private cause of action." *Id.* at 1339 (citing *Independent Meat Packers Ass'n v. Butz,* 526 F.2d 228, 236 (8th Cir. 1975)). A plaintiff must also show "that the President issued the order pursuant to a statutory mandate or delegation of authority from Congress, and therefore the order had the force and effect of law[.]" *Centola v. Potter*, 183 F. Supp. 2d 403, 413 (D. Mass. 2002) (citing *Independent Meat Packers Association,* 526 F.2d at 234–35).

The executive order cited by Plaintiff, which was issued by President Obama in 2011, established the Intellectual Property Enforcement Advisory Committees. *See* Exec. Order No. 13565 of Feb. 8, 2011: Establishment of the Intellectual Property Enforcement Advisory Committees, 79 Fed. Reg. 7681 (Feb. 11, 2011). Section 3(c) specifically notes that "This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." *Id.* at 7683. Because this executive order does not create a private right of action, Plaintiff cannot state a claim under this executive order.

## III. PRO-IP Act

The PRO-IP Act amended the Copyright Act "to close the loophole whereby intellectual property thieves argue that a mistake in the registration documents, such as checking the wrong

box on the registration form, renders a registration invalid and thus forecloses the availability of statutory damages." *Fam. Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 233 (S.D.N.Y. 2012) (citing *Nimmer on Copyright* § 7.20[B][2]); *see also* 17 U.S.C. § 411(b). Plaintiff cites specifically to 15 U.S.C. §§ 8111–16. These provisions relate to the creation of the Intellectual Property Enforcement Coordinator and Advisory Committee. Nothing in these provisions creates a private right of action. Nor, construing Plaintiff's claim liberally, has Plaintiff alleged that there has been any inaccuracy in any certificate of registration that would bring his claim within the purview and protections of 17 U.S.C. § 411(b). Plaintiff has not stated a claim for relief under the PRO-IP Act.

## IV. Defend Trade Secrets Act of 2016

"Congress enacted the Defend Trade Secrets Act [DTSA] to create a federal private cause of action for trade-secret misappropriation." *Steves & Sons, Inc. v. JELD-WEN, Inc.,* 988 F.3d 690, 726 (4th Cir. 2021). "The statute provides, *inter alia*, that plaintiffs are entitled to exemplary damages and attorney's fees if a trade secret is 'willfully and maliciously misappropriated.'" *Id.* (quoting 18 U.S.C. § 1836(b)(3)(C), (D)). "To plead a claim under the [DTSA], a plaintiff 'must allege: (1) [he] owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce.'" *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (quoting 18 U.S.C. § 1836(b)(1)). "To plead the existence of a trade secret in a misappropriation claim brought under the DTSA, [a plaintiff] must sufficiently identify the information [he] claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (quoting 18 U.S.C. §§ 1836(b), 1839(3)). The Third Circuit has explained:

7

> In determining whether allegations about the identified information plausibly support its having protected status as a trade secret, courts consider whether the owner of the information "has taken reasonable measures to keep ... [it] secret" and whether the "information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"

*Id.* (alteration in original) (quoting 18 U.S.C. § 1839(3)). Plaintiff appears to allege that his "proprietary processes, technologies, and strategies" pertaining to markydoo.net are trade secrets that were impermissibly leaked in unspecified data breaches. *See* ECF 1, at 11. Even assuming this is sufficient to plead the existence of a trade secret, Plaintiff has not demonstrated any reasonable measures he has taken to keep it a secret. Indeed, it appears that Plaintiff has voluntarily shared his website and idea with representatives for some, if not all, of the defendant corporations he accuses of misappropriating his trade secrets. *See id.* ("Michael Allen has diligently taken steps to safeguard and advance the concept and innovation behind markydoo.net. He has presented markydoo.net to executives and representatives of the corporations mentioned."). Based on this admission alone, he cannot state a claim under the DTSA.

## V.    Economic Espionage Act

Plaintiff brings claims under the Economic Espionage Act of 1996, which the Court construes as a claim under 18 U.S.C. § 1831, and under 18 U.S.C. § 1832 for theft of trade secrets. "[T]here is no private right of action for misappropriation of trade secrets under [the Economic Espionage Act]." *Saddiq v. Amazon.com*, No. 20-15934, 2021 WL 3743861 (9th Cir. Aug. 24, 2021). Further, both of these statutes are criminal statutes, which generally do not "give rise to civil liability or authorize a private right of action." *Capps v. Long*, No. 20-6789, 2021 WL 4843568, at *2 (4th Cir. Oct. 18, 2021); *see also Cent. Bank of Denver, N.A. v. First Interstate*

*Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).  Thus, Plaintiff cannot state a claim under either cited section of the Economic Espionage Act.

## VI.    Sherman Act

Plaintiff has not stated a claim under the Sherman Act.  "Liability under § 1 of the Sherman Act, 15 U.S.C. § 1, requires a "contract, combination . . . , or conspiracy, in restraint of trade or commerce."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)  (alteration in original).  A claim under § 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  *Id.* at 556.  "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Id.* at 556–57.  For parallel conduct allegations to be sufficient to state a claim, such conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Id.* at 557.  Most generously, his complaint can be read as his idea (markydoo.net) being rejected by each Defendant.[3]  Plaintiff does not allege that Defendants formed any agreement (tacit or explicit) to do so, and his conclusory assertion that Defendants violated § 1 of the Sherman Act is not sufficient to state a claim.

"Under Section 2, '[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person . . . to monopolize any part of the trade' is guilty of an offense and subject to penalties."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011).  "[A] defendant is liable for monopolization when that defendant: (1) possesses monopoly power; and (2) willfully acquires or maintains that power."  *It's My Party,*

---

[3] It is not clear that any Defendant actually took any action at all.  Media companies like Defendants can hardly be expected to respond to every cold email pitch received from a member of the public.

*Inc. v. Live Nat., Inc.*, 88 F. Supp. 3d 475, 498 (D. Md. 2015) (citing *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014)), *aff'd sub nom. Itis My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016).  A plaintiff bringing a claim under Section 2 must define the market including "two components—the relevant product market and the relevant geographic market." *E.I. du Pont de Nemours and Co.*, 637 F.3d at 441 (citing *Consul, Ltd. v. Transco Energy Co.*, 805 F.2d 490,493 (4th Cir. 1986)).

Though Plaintiff identifies the market as "over-the-top streaming service," he nevertheless has not stated a claim under § 2.  The conduct Plaintiff complains of amounts to not responding to his pitch about the potential of markydoo.net and Plaintiff's idea for a streaming service that includes movies still in theaters.  *See* ECF 1, at 11–12.  There are no specific allegations about the alleged monopoly.[4]  Plaintiff's bald assertion that the ten named defendants "established a monopoly in the film streaming industry, stifling the potential of the plaintiff's film streaming platform," *id.* at 11, is too vague to be a cognizable claim.  Plaintiff has not stated a claim under the Sherman Act.

## VII.   Clayton Act

Plaintiff has not stated a claim under the Clayton Act.  First, "[s]ection 3 of the Clayton Act applies to exclusive dealing agreements concerning goods." *Kantor v. Pompeo*, No. 119CV346RDAMSN, 2019 WL 7816856, at *5 (E.D. Va. Dec. 18, 2019); *see also* 15. U.S.C. § 14 (prohibiting conduct relating to "a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities").  Section 7 of the Clayton Act concerns the "[a]quisition by one corporation of stock of another." 15 U.S.C. § 18.  Section 8 places limits on

---

[4] Indeed, Plaintiff seemingly wishes to monopolize the market himself, as he asserts that his "website stood to monopolize the movie streaming market and/or stand out exclusively as the first online box office." ECF 1, at 12.

one person serving simultaneously as a director or officer of multiple companies.  *Id.* § 19.  These sections are plainly inapplicable to Plaintiff's claims.  Plaintiff has not stated a claim under the Clayton Act.

### VIII. Federal Trade Commission Act

Finally, Plaintiff cannot state a claim under the Federal Trade Commission Act because "that statute does not support a private right of action."  *Kantor*, 2019 WL 7816856, at *6 (citing *A & E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 675 (4th Cir. 1986)).

### IX. Conclusion

In addition to its "inherent authority" to dismiss "frivolous complaints," *Chong Su Yi v. Soc. Sec. Admin.*, 554 F. App'x 247, 248 (4th Cir. 2014), a court can also dismiss a complaint sua sponte for failure to state a claim, *Webb v. EPA*, 914 F.2d 1493 (Table) (4th Cir. 1990).  However, "district courts may only exercise their authority to sua sponte dismiss inadequate complaints if the procedure employed is fair to the parties.  Namely, the party whose complaint stands to be dismissed must be afforded notice and an opportunity to amend the complaint or otherwise respond."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021).  The Court will therefore direct Plaintiff to show cause why his complaint should not be dismissed.  He is forewarned that his failure to show cause will result in dismissal of his complaint.

Accordingly, it is this 12th day of July, 2024, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff is DIRECTED to SHOW CAUSE by August 2, 2024, why his complaint should not be dismissed;

2. Plaintiff IS FOREWARNED that failure to comply with this Order in the time specified will result in dismissal of this case without further notice; and

3. The Clerk SHALL PROVIDE a copy of this Order to Plaintiff.

/s/
Brendan A. Hurson
United States District Judge